

FILED by KS D.C.

May 11, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**21-20303-CR-COOKE/O'SULLIVAN**
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

JESUS TRUJILLO,
ALEXEY GIL,
DIDIER ARCIA,
KAREL FELIPE,
TAMARA QUICUTIS,
YORDAN REMEDIO BETANCOURT, and
JEFFREY AVILA,

      Defendants.
_____ /

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.  The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3. Medicare covered different types of benefits and was separated into different program "parts." Medicare "Part A" covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4. CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS separately contracted with private companies in order to administer Medicare Part A, including reviewing HHA providers' claims data. In the State of Michigan, CMS first contracted with TrustSolutions LLC ("TrustSolutions") until April 2012, when it was replaced by Cahaba Safeguard Administrators, LLC ("Cahaba"). Cahaba was replaced by AdvanceMed Corp. ("AdvanceMed") in May 2015. TrustSolutions, Cahaba, and AdvanceMed safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse. TrustSolutions, Cahaba, and AdvanceMed, each, were located outside the State of Florida.

5. Physicians, clinics and other health care providers, including HHAs, that provided services to beneficiaries were able to apply for and obtain a "provider number." A provider that received a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and assigned Medicare number, the services performed, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

## Part A Coverage and Regulations

### Reimbursements

6. Medicare Part A reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the beneficiary qualified for home health benefits. A beneficiary qualified for home health benefits only if the beneficiary:

    (a) was confined to the home, also referred to as homebound;

    (b) was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C"); and

    (c) the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a POC for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

### Record Keeping Requirements

7. Medicare Part A regulations required HHAs providing services to Medicare beneficiaries to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of the beneficiaries, as well as records documenting the actual treatment of beneficiaries to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare, through TrustSolutions, Cahaba, AdvanceMed, and other contractors, to review the appropriateness of Medicare payments made to the HHA under Medicare Part A.

8. Among the written records required to document the appropriateness of home health care claims submitted under Medicare Part A were a: (i) P.O.C. that included the physician order,

diagnoses, types of services/frequency of visits, prognosis/rehabilitation potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the beneficiary was confined to his or her home and was in need of the planned home health services.

9. Medicare Part A regulations required HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any: significant observed signs or symptoms; treatment and drugs administered; reactions by the beneficiary; instruction provided to the beneficiary and the beneficiary's understanding of that instruction; and changes in the beneficiary's physical or emotional condition. The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury. These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

## The Defendants and Related Companies

10. Care Home Health Services, Inc. ("Care") was a Michigan corporation, located in Dearborn Heights, Michigan, that purportedly provided home health services to beneficiaries.

11. Nu-Wave Home Health Care, Inc. ("Nu-Wave") was a Michigan corporation, located in Livonia, Michigan, that purportedly provided home health care services to beneficiaries.

12. Tri-County Home Care LLC ("Tri-County") was a Michigan limited liability company, located in Bingham Farms, Michigan, that purportedly provided home health care services to beneficiaries.

13. Defendant **JESUS TRUJILLO** was a resident of Miami-Dade County, Florida.

14. Defendant **ALEXEY GIL** was a resident of Miami-Dade County, Florida.

15. Defendant **DIDIER ARCIA** was a resident of Miami-Dade County, Florida.

16. Defendant **KAREL FELIPE** was a resident of Miami-Dade County, Florida.

17. Defendant **TAMARA QUICUTIS** was a resident of Miami-Dade County, Florida.

18. Defendant **YORDAN REMEDIO BETANCOURT** was a resident of Miami-Dade County, Florida.

19. Defendant **JEFFREY AVILA** was a resident of Miami-Dade County, Florida.

## COUNT 1
## Conspiracy to Commit Health Care Fraud and Wire Fraud
## (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. From in or around October 2016, and continuing through in or around May 2019, in the Southern District of Florida, and elsewhere, the defendants,

**JESUS TRUJILLO,
ALEXEY GIL,
DIDIER ARCIA,
KAREL FELIPE, and
TAMARA QUICUTIS,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

    a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses,

representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

    b. to knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare using interstate wire communications; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL, TAMARA QUICUTIS** and their co-conspirators acquired, and caused the acquisition of, beneficial ownership interests in HHAs, including Care, Nu-Wave, and Tri-County.

5. **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL**, and their co-conspirators recruited and paid individuals to serve as nominee owners of HHAs, including Nu-Wave and Tri-County, in order to conceal the identities of the beneficial owners of the HHAs.

6. **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL, TAMARA QUICUTIS**, and their co-conspirators submitted, and caused the submission of, false and fraudulent claims on behalf of HHAs, including Care, Nu-Wave, and Tri-County, from Florida, to Medicare and its contractors, through the use of interstate wire communications, for services that were medically unnecessary, not eligible for Medicare reimbursement, and never provided. These false and fraudulent claims included claims for services that were purportedly provided to Medicare beneficiaries after they had died.

7. As a result of these false and fraudulent claims, Care, Nu-Wave, and Tri-County received payment from Medicare, through its contractors, in the approximate sum of at least $53.3 million.

8. **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL**, and their co-conspirators opened, and directed nominee owners to open, shell companies and shell bank accounts.

9. **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL, and TAMARA QUICUTIS**, transferred, and directed the transfer of, money paid by Medicare to the HHAs, including Care, Nu-Wave, and Tri-County, into bank accounts for the shell companies opened by nominee owners for their own personal use, and for the use and benefit of others.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around October 2016, and continuing through in or around May 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**JESUS TRUJILLO,
ALEXEY GIL,
DIDIER ARCIA,
KAREL FELIPE,
TAMARA QUICUTIS,
YORDAN REMEDIO BETANCOURT, and
JEFFREY AVILA,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349.

All in violation of Title 18, United States Code, Section 1956(h).

# FORFEITURE
## (18 U.S.C. § 982)

1. The allegations of this Indictment are hereby realleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which defendants, **JESUS TRUJILLO, DIDIER ARCIA, KAREL FELIPE, ALEXEY GIL, TAMARA QUICUTIS, YORDAN REMEDIO BETANCOURT and JEFFREY AVILA,** have an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

3. Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title

21, United States Code, Section 853(p), which substitute property includes but is not limited to, the following:

(i) Real property located at 10024 Southwest 94th Court, Miami, Florida 33176;

(ii) Real property located at 18106 Southwest 154th Place, Miami, Florida 33187;

(iii) Real property located at 18051 Biscayne Boulevard, Unit 301-1, Aventura, Florida 33160;

(iv) Real property located 2161 SW 139th Avenue, Miami, Florida 33175;

(v) Real property located at 225 North Arboleda Street, Montura Ranches, Florida 33440;

(vi) Real property located at 469 Hunting Club Avenue, Montura Ranches, Florida 33440;.

(vii) Real property located at 1530 Southwest 126 Place, Miami, Florida 33184;

(viii) Real property located at 370 North Kennel Street, Montura Ranches, Florida 33440;

(ix) Real property located at 13822 Queen Avenue, Clewiston, Florida 33440;

(x) Real property located at 13821 Tangelo Avenue, Clewiston, Florida 33440;

(xi) Real property located at 10318 Southwest 159th Avenue, Miami, Florida 33196;

(xii) Real property located at 114 Cana Lane, Davenport, Florida 33837;

(xiii) Real property located at 250 Lake Crest Loop, Davenport, Florida 33837;

(xiv) A 2018 white Ford F350 bearing Vehicle Identification Number ("VIN") 1FT8W3DT3JEB04784;

(xv) 2020 All Marine trailer bearing VIN 1A9BB3635LM806438; and

(xvi) 2018 vessel bearing hull number BUJ90893H718.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(7), and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

_____
FOREPERSON/

_____
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

DANIEL KAHN, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUCTICE

ALLAN MEDINA, DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
EMILY M. GURSKIS
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA<br>v.<br><br>JESUS TRUJILLO, et al.<br>Defendants/ | CASE NO. _____<br><br>**CERTIFICATE OF TRIAL ATTORNEY\***<br>**Superseding Case Information:** |
|---|---|

**Court Division:** (Select One)
[✓] Miami  [ ] Key West  [ ] FTL
[ ] WPB  [ ] FTP

New defendant(s) [ ] Yes [ ] No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.
3. Interpreter: (Yes or No) **Yes**
   List language and/or dialect **Spanish**
4. This case will take **15** days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   0 to 5 days      [ ]
   II  6 to 10 days     [ ]
   III 11 to 20 days    [✓]
   IV  21 to 60 days    [ ]
   V   61 days and over [ ]

   (Check only one)
   Petty        [ ]
   Minor        [ ]
   Misdemeanor  [ ]
   Felony       [✓]

6. Has this case previously been filed in this District Court? (Yes or No) **No**
   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) **No**
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No) **No**

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No**
8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**
9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No**

_____
EMILY GURSKIS
DOJ Trial Attorney
Court ID No.    A5502499

\*Penalty Sheet(s) attached

REV 3/19/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**     JESUS TRUJILLO

**Case No:** _____

Count #: 1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:** Twenty (20) years' imprisonment

Count #: 2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

\*Max Penalty: Twenty (20) years' imprisonment

Count #:

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**     ALEXEY GIL

**Case No:**

Count #:   1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:    Twenty (20) years' imprisonment

Count #:   2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

\*Max Penalty:     Twenty (20) years' imprisonment

Count #:

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**     **DIDIER ARCIA**

**Case No:** _____

Count #:  1

  Title 18, United States Code, Section 1349

  Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:  Twenty (20) years' imprisonment

Count #:  2

  Title 18, United States Code, Section 1956(h)

  Conspiracy to Commit Money Laundering

\*Max Penalty:  Twenty (20) years' imprisonment

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   KAREL FELIPE

**Case No:**

Count #:  1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**: Twenty (20) years' imprisonment

Count #:  2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

\*Max Penalty:   Twenty (20) years' imprisonment

Count #:

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**      TAMARA QUICUTIS

**Case No:**

Count #:  1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud and Wire Fraud

***Max Penalty**:   Twenty (20) years' imprisonment

Count #:  2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

***Max Penalty:**   Twenty (20) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**    **YORDAN REMEDIO BETANCOURT**

**Case No:** _____

Count #:   2

  Title 18, United States Code, Section 1956(h)

  Conspiracy to Commit Money Laundering

*Max Penalty:    Twenty (20) years' imprisonment

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**     JEFFREY AVILA

**Case No:**

Count #: 2

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

*Max Penalty: Twenty (20) years' imprisonment

Count #:



*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**