UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-CR-20303-DPG

UNITED STATES OF AMERICA,

v.

JESUS TRUJILLO *et al.*,

    Defendants.
_____/

## ORDER DENYING MOTION *IN LIMINE* TO PROHIBIT ADMISSION OF EXTRINSIC EVIDENCE

THIS MATTER is before the Court on Defendant Jesus Trujillo's Motion *in Limine* to Prohibit the Admission of Extrinsic Evidence [DE 186]. Defendant Alexey Gil moved to adopt [DE 194] the Motion, which the Court has granted [DE 200].

The Motion *in Limine* [DE 186] seeks to exclude the first three categories of evidence that the Government expects to introduce per its Notice of Intent to Use Inextricably Intertwined Evidence and/or Rule 404(b) Evidence [DE 118]. Specifically, the Government seeks to introduce the following three categories of evidence:[1] (A) Defendant Gil's alleged prior participation in an insurance fraud scheme with co-conspirator Vicente Gonzalez Acosta; (B) Defendants' allegedly sending Gonzalez Acosta to Michigan in furtherance of the charged conspiracies, after the conclusion of Gonzalez Acosta's term of supervised release; and (C) Defendant Trujillo and co-conspirator Eduardo Rubal's alleged prior work with other fraudulent health clinics. DE 118. The Court has considered the Government's Notice of Intent [DE 118], the Motion [DE 186], the Government's Reply [DE 201], and the record. Because the

---

[1] The fourth category pertaining to the alleged drug use evidence as to Karel Felipe and Didier Arcia is deemed admitted, as these Defendants do not object to its admission.

evidence of uncharged crimes is inextricably intertwined to the evidence regarding the charged conspiracies and is also admissible pursuant to Federal Rule of Evidence 404(b), the Motion is DENIED.

I. BACKGROUND

Defendants and their alleged co-conspirators were indicted in May 2021 on charges of conspiracy to commit health care fraud and wire fraud (18 U.S.C. § 1349) and conspiracy to commit money laundering (18 U.S.C. § 1956(h)). DE 1 at 5, 8. Specifically, the Government alleged that Defendants and their co-conspirators were involved in a Medicare fraud "bust-out" scheme involving home health agencies ("HHAs"). DE 118 at 2. In a bust-out scheme, the HHA submits to Medicare a request for advanced payment ("RAP") and receives 60 percent of reimbursement for claims submitted to Medicare before the HHA is required to provide supporting documentation that would verify the claims. *Id.*

In this case, the Government alleges Defendants relied on three HHAs in Michigan, which they purportedly purchased and enrolled in Medicare under the name of nominee owners. DE 1 at 7. The nominee owners allegedly had strong ties to Cuba, where they promised they would return upon the conclusion of the scheme. DE 118 at 3. Medicare paid the HHAs more than $53 million for the sham claims. DE 1 at 7; *id.* Defendants and their co-conspirators then allegedly funneled that sum through multiple layers of shell companies and bank accounts. DE 118 at 3. Afterwards, they purportedly relied on money mules to convert the funds to cash at ATMs and check-cashing stores around Miami as well as in Illinois and Michigan. *Id.* To stop the nominee owners from providing inculpatory information to law enforcement,

Defendants and their co-conspirators controlled the nominee owners' travel activity and paid them part of a promised sum. *Id.* The scheme allegedly took place from around October 2016 through May 2019. DE 1 at 5, 8.

II. LEGAL STANDARD

Evidence of uncharged criminal conduct is intrinsic and falls outside the scope of Rule 404(b) when it (1) arose out of the same transaction or series of transactions as the charged offense, (2) is necessary to complete the story of the crime, or (3) is inextricably intertwined with the evidence regarding the charged offense. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007); *see also United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir.1985)) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.").

Under Rule 404(b), although evidence of other crimes is not admissible to prove a person's character to show action in conformity therewith, it may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b). For evidence to be admissible under Rule 404(b), (1) it must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance that the defendant committed the act(s) in question; and (3) the

probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403.[2] *Edouard*, 485 F.3d at 1344.

III. ANALYSIS

The evidence of uncharged criminal conduct that the Government seeks to introduce at trial is inextricably intertwined with the evidence regarding the charged conspiracies. It is also admissible pursuant to Rule 404(b).

Defendant Gil's alleged participation in a prior insurance fraud scheme with cooperating witness Gonzalez Acosta is necessary to complete the story of the crime for the jury and forms an integral and natural part of an account of the crime. The alleged insurance fraud scheme, like the charged Medicare bust-out scheme, involved recruiting and using nominee owners to conceal the identities of participants in a lucrative fraud scheme. DE 118 at 9; DE 201 at 3. Likewise, the introduction of Gonzalez Acosta to Defendant Gil by Gonzalez Acosta's cellmate is essential to the jury's understanding of how the co-conspirators' relationship developed over time and the bust-out scheme operated. *See, e.g., United States v. Acosta*, 2014 WL 12643262, at *4 (S.D. Fla. Oct. 9, 2014) (Moore, J.) (finding that evidence of earlier marijuana transaction flight showed co-conspirators' relationship in case involving conspiracy to import cocaine).

Evidence of the alleged insurance fraud scheme is also admissible pursuant to Rule 404(b): it helps show Defendant Gil's knowledge of the means to conceal

---

[2] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Because exclusion under Rule 403 is so drastic a remedy, the Eleventh Circuit has cautioned that the balance should be struck in favor of admissibility. *United States v. Bradley*, 644 F.3d 1213, 1272 (11th Cir. 2011) (citation and internal quotation marks omitted).

fraudulent schemes and intent to shield himself from liability by using nominee owners. Moreover, the Government is expected to put forth other evidence to enable the jury to find that Defendant Gil participated in the scheme, and the evidence complies with Rule 403.

The evidence that Defendants allegedly waited until the end of cooperating witness Gonzalez Acosta's term of supervised release for Medicare fraud to send him to Michigan is also inextricably intertwined with the evidence of the charged conspiracies. Gonzalez Acosta's recruitment for the charged scheme happened after his term of supervised release so that Gonzalez Acosta would not have to report his travel to United States Probation. DE 118 at 11; DE 201 at 6. The timing of Gonzalez Acosta's recruitment pertains to the chain of events explaining the context and set-up of the charged crimes. *McLean*, 138 F.3d at 1403.

Even if it were not admissible as inextricably intertwined, this evidence is admissible under Rule 404(b). Defendants' delay of Gonzalez Acosta's recruitment so as not to alert US Probation to his travel helps prove Defendants' knowledge of the criminality of the scheme and their consciousness of guilt. The Government asserts there will be sufficient evidence for the jury to find by a preponderance that Defendants timed Gonzalez Acosta's involvement in the conspiracy this way. Furthermore, this evidence of the timing of Gonzalez Acosta's recruitment is highly probative, and this probative value is not substantially outweighed by its undue prejudice.

The evidence of Eduardo Rubal and Defendant Trujillo's participation in prior fraudulent schemes involving HHAs is also inextricably intertwined with the evidence of the charged conspiracies. Because this evidence describes Defendant Trujillo's

5

involvement in a very similar healthcare fraud scheme, it forms an integral and natural part of an account of the scheme for which he was indicted. *Edouard*, 485 F.3d at 1344. This evidence is also admissible under Rule 404(b) as it helps establish Defendant Trujillo's intent and knowledge of the scheme and meets the Eleventh Circuit's three-part test. *See United States v. Prophete*, 522 F. App'x 583, 586 (11th Cir. 2013) (finding evidence of the defendant's involvement in a similar bank fraud scheme to be admissible as inextricably intertwined and under Rule 404(b)).

IV. CONCLUSION

The different categories of evidence of uncharged crimes that the Government seeks to introduce at trial are inextricably intertwined with the evidence regarding the charged Medicare bust-out and money laundering schemes. The evidence of uncharged crimes is also admissible pursuant to Federal Rule of Evidence 404(b). Accordingly, it is

ORDERED that Defendants' Motion *in Limine* to Prohibit Admission of Extrinsic Evidence [DE 186] is DENIED.

DONE AND ORDERED in Miami, Florida, this 18th day of April, 2023.

*Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record