UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20303-GAYLES

UNITED STATES OF AMERICA

v.

JESUS TRUJILLO, et al.,

        **Defendant(s)**.

_____/

**DEFENDANT, JESUS TRUJILLO'S,
OBJECTIONS/OMISSIONS AND CORRECTIONS
TO THE PRE-SENTENCE INVESTIGATION REPORT**

**COMES NOW,** the Defendant, **JESUS TRUJILLO**, by and through his undersigned attorney, and pursuant to Rule 32(f)(1) and (2) of the Federal Rules of Criminal Procedure files his objections/omissions and corrections to the Pre-Sentence Investigation Report.

The objections/omissions and corrections will follow the format and number paragraphs of the Pre-Sentence Report for convenience and ease of reference.

**PRELIMINARY MATTERS**
**(Pages 2-3)**

This case also involves all of the Defendants that were initially arrested under case 19-CR-20354 and ultimately sentenced by the Honorable Judge Smith. The

draft PSR here has omitted eight defendants and needs to include the following defendants, along with their sentence: Eduardo Rubal (210 months), Hector Suarez Gonzalez (78 months), Alberto Orian Gonzalez-Delgado (210 months), Vincente Gonzalez Acosta (188 months), Alexander Fernandez (120 months), Jose Carlos Valladares Rivera (97 months), Yaxing Tapanes (97 months), and Antonio Jimenez (48 months). All of those defendants were involved in the exact same conspiracy as those involved under this case number - - 21-CR-20303. The Court should be made aware of that fact to avoid unnecessary sentencing disparities among co-defendants and to properly assess the role each played in the conspiracy.

### PART A.  THE OFFENSE
### (PAGES 7 TO 10)

**Paragraph 15:** The Defendant objects to his inclusion of acquiring any ownership interests in any HHA. Defendants Eduardo Rubal and Alberto Orian Gonzalez-Delgado, where the ones responsible for acquiring and holding beneficial ownership interests in the HHAs.

**Paragraph 16:** The Defendant objects to the inclusion of recruiting and paying individuals to serve as nominee owners of HHAs and the opening of shell corporations with corresponding bank accounts. That was the primary responsibility of Alberto Orian Gonzalez-Delgado, who created, maintained, and updated complex

and detailed EXCEL Spreadsheets regarding the flow of money once proceeds of the fraud were received into the main HHA accounts. He also held all of the account books, checks, account numbers, codes and passwords for each account. That was accomplished, tracked and controlled very carefully at the "office" with others - - but the Defendant did not participate in that aspect of the conspiracy; nor did he ever go into the "office". He did, however, know that Rubal was engaged in Health Care Fraud and the proceeds he laundered were from the fraud. The Defendant's primary responsibility, however, was money laundering of the cash, as reflected in Government's discovery and Bate Stamp at 0095857. He was one of several defendants/unindicted co-conspirators - - and not the only one - - that was used by Rubal and Gonzalez-Delgado, to launder money of the fraud. In fact, other money laundering groups included: "8 Street", "Hialeah", "Zod Acct", "Gdo" (not the Gordos), and "ATM." See Government Exhibit 502. He was associated with defendant Gil and called the "Gordos."

**Paragraph 17**: The defense objects to the inclusion that the defendant submitted false and fraudulent claims. Others in the conspiracy, located in the "office", did that. The defendant did not do that. He knew, however, that others, mainly Rubal were doing that as the fraud to acquire money.

**Paragraph 18:** The defense objects that the defendant knew exactly how much was billed by those in the office. His job was to launder the money that was allocated to

him and return the cash to Rubal after he took his share. He was not told what others received; nor did he know what the other money laundering groups received to launder. He certainly did not launder $37,000,000.00.

**Paragraph 19:** The defense objects that he was approached to become a 50 percent owner of Tri-County. The Defendant had nothing to offer Rubal such that Rubal would agree to have a new partner in his fraud. In fact, the EXCEL SPREADSHEETS found in the office by government agents contradict that claim. Rubal did ask him to provide nominees owners; but Jesus did not know any. Instead, Gil provided the nominees for that HHA. Jesus did not supervise or control Gil or Gonzalez Acosta - - nor did he send anyone to Michigan to purchase, monitor or control any aspect of Tri-County.

**Paragraph 22:** The defendant objects that opened or directed nominees to open shell corporations and corresponding corporate bank accounts. Others did that not the Defendant. He became aware, however, that the fraud operated in that fashion.

**Paragraphs 23:** The defense objects to the inclusion of what happened in the "office." That activity described in this paragraph was conducted by those in the office - - and not Jesus, as previously mentioned. Hundreds of EXCEL SPREEDSHEETS, books, notes, and ledgers were used by Gonzales-Delgado, and others in the "office" to accomplish that task. Jesus never went into the "office."

**Paragraph 24:**  The defense objects to the inclusion of this information as he did not require nominees to return to Cuba or take part in that aspect of the conspiracy - - others did.

**Paragraph 26:** The Defendant did not launder $37 million from Nu-Wave and $7.7 Million for Tri-County. Numerous money laundering groups were assigned to launder a portion of the money from the fraud as directed and allocated by Rubal and Gonzalez-Delgado. The EXCEL SPREADSHEETS, ledgers, notes and accounting books, that law enforcement seized illustrate that.

## ROLE ASSESSMENT
### (Page 12)

**Paragraph 32:**     The Defendant objects to any role enhancement.  He did not create any shell companies - - Rubal and Gonzalez-Delgado did that.  He was not an owner of Tri-County.  Moreover, Jesus did not supervise, manage or control Gil or Gonzalez Acosta.  No points should be included for a role adjustment.

## PART B.   ADVISORY GUIDELINE CALCULATION
### (Pages 14-15)

**Paragraph 41:**  The Defendants objects to a 22 level increase for a loss amount. The Defendant was engaged in the money laundering aspect of this conspiracy.  He was known as one of the "Gordos" like Gil. He joined the conspiracy about the same

time as Gil and his loss was calculated at 18 points or $7,771,884.00.  See USSG 2B1.1(b)(J).  As such, the same calculation should be applied to him. The mere fact that Gil "cooperated" does not mean the loss amount should be different. In addition, since the loss is below $20million - - only 3 points and not 4 points should be added pursuant to USSG 2B1.1(b)(7)(A)(ii).  Moreover, the defendant did not relocate the HHAs.  All of the HHAs were in the same place as when they functioned lawfully or initially purchased. Since there was no "relocation" of any of the HHAs in this matter, no points should be added pursuant to USSG 2B1.1(b)(10(A). As a result, the total points are 28 and not 35.

**Paragraph 42 and 43:** The Defense objects to these two enhancements. These two enhancements should not be calculated here because that violates the grouping rules under USSG 3D1.1 to 3D1.5.  Both of these specific offenses are enhancements under the money laundering AGL (2S1.1) and not the fraud guideline (2B1.1). Moreover, they would not apply even under the money laundering guideline. Sophisticated Means has been amended to reflect the defendant's conduct and not the scheme or Gonzalez-Delgado's complex corporate structures and shell companies. Here in full is the Sophisticated Means Amendment:

the amendment narrows the focus of the specific offense characteristic at §2B1.1(b)(10)(C) to cases in which the defendant intentionally engaged in or caused conduct constituting sophisticated means. Prior to the amendment, the enhancement applied if "the offense otherwise involved sophisticated means." Based on this language, courts had applied this enhancement on the basis of the sophistication of the overall scheme without a determination of whether the defendant's own conduct was "sophisticated." See, e.g., United States v. Green, 648 F.3d 569,

6

576 (7th Cir. 2011); United States v. Bishop-Oyedepo, 480 Fed. App'x 431, 433–34 (7th Cir. 2012); United States v. Jenkins-Watt, 574 F.3d 950, 965 (8th Cir. 2009). The Commission concluded that basing the enhancement on the defendant's own intentional conduct better reflects the defendant's culpability and will appropriately minimize application of this enhancement to less culpable offenders.

See Amendment 792, supplement to Appendix C (November 1, 2023), page 105.

Moreover, the two offense should be treated as a single offense to avoid double counting and limit prosecutorial input since both charges fall under section 2 (2B1.1 and 2S1.1). In fact, each offense should be calculated individually. The fraud guidelines (2B1.1) yield an offense level of 28; while the money laundering guideline would yield either 22 or 24 points. The AGL instructs the use of the higher offense level - - in this case 2B1.1 or 28 points. As such, the defense objects to a total of 4 points under para 42 and 43.

**Paragraph 45:** The defense as stated above at para 32; objects to any enhancement for role in the offense. Jesus was not a leader, manager or supervisor. He was one of many that laundered proceeds of the fraud for Rubal. As such, zero points should be allocated here.

**Paragraph 47:** The defendant objects to this figure. The Adjusted Offense Level should be 28.

**Paragraph 48:** The defendant has zero criminal history points and two points should be reduced from his adjusted offense level pursuant to 4C1.1 that took effect on November 1st, 2023.

**Paragraph 51: Total Offense Level** should be **23**, if the above objections are sustained.

### PART C.  THE DEFENDANT'S CRIMINAL HISTORY

Application Of Part-C Adjustment For Certain Zero-Point Offenders, Pursuant To Section 4c1.1  (Effective November 1st, 2023)

**Paragraph 54:** The Defendant's sentencing hearing is scheduled for November 17th, 2023.  The PSR does not take into account the new criminal history amendment that have taken effect on  November 1st, 2023.

**Paragraph 70:** The Defendant report that he has been abusing alcohol and would like treatment for such.

### PART D.   SENTENCING OPTIONS

**Paragraph 88:** The guidelines are incorrect and the **total offense level should be 23.**  As such, the guideline imprisonment range is 46-57 months.

## PART E.  FACTORS THAT MAY WARRANT DEPARTURE AND/OR VARIANCE

**Paragraph 94:**  The Defendant objects to this conclusion - - it is contrary to law, especially after *US v. Booker*, 125 S.Ct. 738 (2005).  The advisory guidelines are advisory.  The Court can sentence the Defendant to any sentence after considering the advisory guidelines, 18 USC § 3553 factors, and considering any departure/variances.  The Defendant should not be punished simply because he pled open to the Court and did not cooperate.

A sentencing memorandum  pursuant to 18 USC § 3553 will be filed in aid of sentencing.

## CERTIFICATE OF SERVICE

**I CERTIFY** that on December 11th, 2023, I electronically filed the foregoing document with service to all counsel of record using CM/ECF.

Respectfully submitted,

 s/ S. Patrick Dray
S. PATRICK DRAY, ESQUIRE

*S. PATRICK DRAY, P.A.*

S. Patrick Dray, Esq.,
333 SE 2nd Ave., Suite 2000
Miami, FL 33131

18501 Pines Blvd., Suite 344
Pembroke Pines, FL 33029

/s/ *S. Patrick Dray*
    S. Patrick Dray
    Florida Bar No. 180157
    pat@patdray.com
    305-379-4501

Ernesto S. Medina
782 NW 42nd Avenue, Suite 634
Miami, FL 33126
emedina0653@aol.com
(305) 260-0541

Attorney for Defendant Jesus Trujillo