UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-20303-GAYLES

UNITED STATES OF AMERICA

v.

JESUS TRUJILLO, et al.,

Defendant(s).

_____/

DEFENDANT, JESUS TRUJILLO'S,
MOTION FOR DOWNWARD VARIANCE
PURSUANT TO 18 USC § 3553 FACTORS WITH INCORPORATED
MEMORANDUM OF LAW IN AID OF SENTENCING

*"Each of us is more than the worse thing we've ever done."*

*- - Bryan Stevenson, Just Mercy (2014).*

**COMES NOW,** the Defendant, **JESUS TRUJILLO**, by and through his undersigned attorney, and hereby submits this Motion for a Downward Variance[1] with Memorandum of Law in Aid of Sentencing pursuant to 18 USC §3553(a). The Defense recommends that the Court sentence the Defendant below the Advisory Guidelines ("AGL") because the  AGLs  completely fail to consider the 18 USC §

---

[1] The Government and Defense reached an agreement as to the AGL as reflected in DE 376 called "sentencing agreement." The agreement permits the filing of a defense motion for downward variance for Jesus Trujillo.

3553 factors. The mathematical computations generated by the advisory guidelines (hereinafter referred to "AGL") drive the guidelines upward based primarily on the loss amount[2]. In short, the AGLs completely fail to consider important factors that include Mr. Trujillo - - the person - - his family situation. Lastly, the imposition of a guideline sentence here would clearly be greater than necessary and would defeat the principles of sentencing that have been developed after *Booker*, especially for a first-time offender with zero criminal history points.

### Defense Recommended Sentence

The Defense seeks a sentence that is sufficient but not greater than necessary, and for the reasons stated below; recommends a sentence below the advisory guidelines.

### PART I

The Supreme Court's decision in *Booker* freed District Courts from the mandatory nature of the Federal Sentencing Guidelines. They are advisory. Since *Booker*, courts have repeatedly emphasized that the guidelines are not only ***not*** mandatory, but "they are also not to be presumed reasonable." *Nelson v. United*

---

[2] For example, the total offense level calculated here is 35, by agreement with the Government. See DE 376. The Court should be aware that 22 points are derived from the loss amount; and a further enhancement of 4 points is added because the loss amount to a federal health care program is more than $20 million. As such, 26 of the 35 AGL points (or almost 75%) are related directly to the loss amount.

*States*, 129 S. Ct. 890 (2009); *see also United States v. Hunt*, 495 F.3d 1180 (11th Cir. 2006) (courts "may determine, on a case-by-case basis the weight to give the Guidelines, so long as that determination is made with reference to the remaining Section 3553(a) factors that the court must also consider in calculating the defendant's sentence."). Indeed, the Eleventh Circuit in *Hunt* acknowledged that there are "many instances where the Guidelines range will not yield a reasonable sentence." *Id*. at 1184.

Courts must consider all of the § 3553(a) factors. *Id*. This section provides that "the court shall impose a sentence that is sufficient, but not greater than necessary." The factors that courts shall consider are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed –
   a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b. To afford adequate deterrence to criminal conduct;
   c. To protect the public from further crimes of the defendant; and
   d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The applicable category of the offense committed by the applicable category of the defendant as set forth in the Guidelines . . .

(5) Any pertinent [Guidelines] policy statements. . .

(6) The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

The defense will discuss three factors that have not been discussed fully or analyzed by the Government or US Probation and weigh in favor of finding that Mr. Trujillo should receive a sentence below the current advisory guideline range.

## **PART II**

### A.   History and Characteristics of Mr. Trujillo

Mr. Trujillo was born on March 5th, 1971 in Cuba, and he is currently a US Citizen and 52 years old. His family - - 80 year old mother, Enoe Matilda Napoles Estevez, and his two brothers also reside here.  The oldest, Manuel de Jesus Trujillo is  54, married with two children and works at a dry-cleaning business. His other brother, Alberto Perez is 49 years old, married, with 4 children and is a coordinator at Triangulo Services here in Miami. See letters of support filed here at DE 380; and PSR, pages 17-18, paras 60-65.

Mr. Trujillo, is presently single.  He was married to Maria Trujillo from February 2009 until March 2016.  They have two children. His son, Jesus Manuel Trujillo, Jr., is 14 years old; and Gabriela Trujillo is 4 years old. Mr. Trujillo spends

a great deal of his time with his son - - taking him to soccer practices, games and soccer tournaments; while Maria focus on infant Gabriela.   Mr. Trujillo also maintains and has excellent ties with his oldest son, William Trujillo, from his first marriage, and who is 27 years old and works as a aeronautics mechanic here in Miami.   The numerous letters of reference about how Mr. Trujillo cares for his family are an outstanding testament to his character as a son and father.  See DE 380.

In crafting sentences, courts are instructed to consider the the "nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1).   Mr. Trujillo has always taken care of his children; especially his youngest son - - most notably driving him to sports events.  He loves his family very much and spends a lot of time with them.  This true even while he was on pre-trial release.  He still remained involved with his family even though he was working full time and had a curfew with other restrictions[3].

These factors are important and should be considered by the district court in fashioning a sentence for Mr. Trujillo. See 3553(a)(1) and see *also United States v. Baldwin*, 560 Fed. Appx. 854, 856 (11th Cir. 2014)(demonstrating that an offenders' relevant characteristics and history can include the needs of family members).  The

---

[3] He was on bond with a GPS monitor since his arrest on May 18th, 2021, or well over 2.5 years ago and has been in full compliance and has had no violations.  He proved he was not a risk of flight or a danger to the community.

letters in support, demonstrate that Mr. Trujillo is needed at home to support his family.  A long sentence will have serious negative repercussions and impact on his family - - especially his 14-year-old son.

### B. Pertinent [Guidelines] Policy Statements

Additionally, subsection (5) provides that the court shall consider "any pertinent [Guidelines] policy statements."  The word "shall" is important because sometimes the guidelines overstate the defendant's criminal conduct - - as opposed to the overall scheme - - as is the case here.  Applying the guidelines to Mr. Trujillo will not result in a "just sentence" as required.

The passage of the First Step Act and the new CHC Amendment at USSG §4C1.1, effective November 1st, 2023, are clear indications that current sentencing philosophies aim at shorter sentences of incarceration especially for defendants convicted of non-violent crimes. See *United States v. Langston*, 590 F.3d 1226 (11th Cir. 2009).  Moreover, a variance should be applied pursuant to the new Zero Criminal History Amendment effective November 1st, 2023, at 4C1.1.

The Government argues in DE 377, page 6, footnote 4,  that the Defendant, Mr. Trujillo, should not get this benefit because of his aggravating role under §3B1.1. See §4C1.1(a)(10).   The Government, however, is incorrect because a complete reading of that disqualifier requires not just an  "aggravating role"  but

also, or in addition, for the defendant to "be engaged in a continuing criminal enterprise, as defined in 21 USC §848." Below is §4C1.1(a)(10) in full:

> (10) the defendant did not receive an adjustment under §3B1.1. (aggravating Role) ***and*** was not engaged in a continuing criminal enterprise, as defined in 21 USC §848.
>      (emphasis added)

As such, he is entitled to a variance of 2 points off the total offense level pursuant to this new amendment at §4C1.1 because he was not engaged in a CCE offense as defined in 21 USC §848.

See also controlling case law in this Circuit regarding the word "and" or the phrase "and means "and"". See *US v. Garcon*, 54 F. 4th 1274, 1278 (11th Cir. 2022). Lastly, numerous district court judges in this district have provided this relief - - as a variance - - even prior to the effective date of the Amendment or before November 1st, 2023.

### C.   Reasonableness of the Guidelines and Sentencing Disparity

*The Guidelines Are Unreasonable as Applied to Mr. Trujillo*
*unless a variance is applied*

18 USC § 3553(a)(2)(A) states that the court shall consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, deterrence, and to provide just punishment for the offense." Even a sentence below the AGLs by two or three points would still produce and result in a severe

sentence. A sentence below the AGLs does not mean the sentence is not harsh, or severe. The Government's Chart of other co-defendants in this scheme at DE 377, page 10, is incomplete because it omits that Rubal the master-mind of health care fraud will most likely seek a 50% reduction of his sentence. Clearly, it would be unjust for Rubal to end up with a sentence that is less that Mr. Trujillo. Moreover, the chart fails to provide the CHC of the co-defendants. For example, the Government elected to refer to co-defendant, Vicente Gonzalez Acosta, in their sentencing memo; but he had CHC III - - and had also just been convicted in a federal health care fraud with many striking similarities to this fraud and received 188 months here.[4]

## <u>CONCLUSION</u>

This Court must now fashion a just and appropriate sentence for Mr. Trujillo taking into account not only his wrongdoings, but his devotion to his family - - his children. His guilty conviction does not, however, define the entirety of who he is as

---

[4] What is not easily ascertainable or determined is the precise similarities to this fraud. For that, one must first look at DE 181, "Notice of Related Cases", filed at 09-Cr-20523-Seitz and 09-CR-21048-Jordan. In that case, Vicente Gonzalez was charged with many others. More importantly, the fraudulent medical clinics were located in Georgia, North Carolina, South Carolina and Louisiana - - and not in Florida. Moreover, in that scheme, Vicente Gonzalez entered into a plea agreement with the Government. He was a manager/supervisor and received 3 points enhancement for his role. The plea agreement reveals that he even opened up a check cashing store in New Orleans to help launder proceeds through numerous nominees that he controlled. See DE 104, 09-CR-20523-Seitz. All of these activities took place in 2008-2009 - - well before Co-Defendant Gil introduced him to Mr. Trujillo.

a person. When you look at Mr. Trujillo, as a whole, at the complete picture of the man, you see a man who, while flawed, is also fundamentally good. Many people in the community hold that view as demonstrated by the numerous letters of support. See DE 380.

As the Supreme Court established in *United States v. Booker*, 543 U.S. 220 (2006), the sentencing guidelines are merely advisory. This court can vary downward from the guideline range, and this is a case where it should. A just sentence here requires a variance from these AGLs. The defense has confidence that even a reasonable downward variance will still produce a harsh sentence that the Government seeks; but it will be sufficient and not greater than necessary to punish Mr. Trujillo.

**WHEREFORE**, the Defendant respectfully requests this Honorable Court to enter its Order Granting this motion for a downward variance and impose the Defense recommended sentence because it is not greater than necessary.

Respectfully submitted,

***S. PATRICK DRAY, P.A.***
S. Patrick Dray, Esq.,
40 NW Third Street, Suite 200
Miami, FL  33128
Ph. (305) 379-4501

18501 Pines Blvd., Suite 344
Pembroke Pines, FL 33029

By: /s/ *S. Patrick Dray*
      S. Patrick Dray
      Florida Bar No. 180157
      pat@patdray.com

      Ernesto S. Medina
      782 NW 42nd Avenue, Suite 634
      Miami, FL 33126
      emedina0653@aol.com
      (305) 260-0541

      Attorney for Defendant Jesus Trujillo

## <u>CERTIFICATE OF SERVICE</u>

**I CERTIFY** that on December 19th, 2023, I electronically filed the

foregoing document with service to all counsel of record using CM/ECF.

      /s/ *S. Patrick Dray*
      S. Patrick Dray
      Florida Bar No. 180157